IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BHATT INTERNATIONAL, INC., Plaintiff | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-2247 |
| | § | |
| ONE WORLD LOGISTICS, INC., | § | |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT COURT JUDGE:

Plaintiff Bhatt International Trading, Inc. (hereinafter "Plaintiff" or "Bhatt"), alleges as follows:

## I. JURISDICTION

1. Bhatt's complaint concerns a contract associated with the maritime transportation of cargo and is therefore within the jurisdiction of this Court pursuant to 28 U.S.C. § 1333 with claims pendent or ancillary to the same and are admiralty and maritime claims within the meaning of Rule 9(h), Federal Rules of Civil Procedure.

## II. PARTIES

2. Bhatt is now and at all material times herein a corporation duly organized under the laws of the State of Missouri with its principal place of business in Missouri.

3. Plaintiff is informed and believes that One World Logistics, Inc. ("OWL" or "Defendant") was at all times herein relevant a corporation organized under the laws of the state of Texas with its principal place of business in Houston, Texas. At all times relevant, OWL was a freight forwarder licensed by the Federal Maritime Commission. On information and belief, OWL regularly

engages in the business of arranging for transportation of cargo in the foreign commerce of the United States.

4. Bhatt is, inter alia, an exporter of recycled metals.

## III. FACTS

5. On or about June and July of 2020, OWL arranged for the transportation of 14 containers of recycled metal from the USA to India via an ocean common carrier, Hapag Lloyd AG ("Hapag").

6. Hapag issued 7 bills of lading to facilitate the transportation of the goods. A summary of the containers and associated bills of lading is filed herewith as Exhibit A.

7. As part of its function and obligation as a freight forwarder, per 46 CFR §515.2(h) OWL was to, *inter alia*: a) book or arrange for the cargo space on a vessel; b) process bills of lading; and c) handle freight or other monies advanced by shippers such as Bhatt in connection with the shipments.

8. In the ordinary course, after booking the shipments through OWL, OWL would provide the Hapag bills of lading to Bhatt. Bhatt would pay the ocean freight charges to OWL and OWL would remit the ocean freight to Hapag so that Hapag's agent at destination could release the cargo. A delivery order would then be generated for ultimate release of the cargo into the consignee's custody upon tender of the Hapag bills of lading (when "to order" bills of lading were issued).

9. As related to the shipments listed in Exhibit A, when Bhatt received the bills of lading from OWL, Bhatt paid OWL freight charges in the amounts listed in Exhibit A. In turn, OWL was required to remit ocean freight to Hapag for the transportation of the cargo.

10. For the shipments listed in Exhibit A, when Bhatt's customers tendered to Hapag endorsed bills of lading and attempted to secure delivery orders and release of the cargo, the customers

were informed that the bills of lading presented were not genuine. Copies of the alleged non genuine bills of lading are filed herewith as Exhibit B.[1]

11. Upon notification by the consignees of this situation, Bhatt contacted Hapag in an attempt to solve the situation. On or about September 3, 2020, Hapag notified Bhatt that the ocean freight related to the subject bills of lading had not been paid and informed Bhatt that Hapag believed the bills of lading were not genuine as the Hapag system did not reflect issuance of the subject bills of lading.

12. On or about September 4, 2020, Bhatt paid Hapag directly for any outstanding ocean freight as reflected in Exhibit A so that additional sets of the original bills of lading could be issued as required by Hapag and the consignees on the bills of lading could retrieve their cargo. A copy of the newly generated bills of lading by Hapag is filed herewith as Exhibit C.[2]

## IV. FIRST COUNT

## (Breach of Contract against OWL)

13. Plaintiff refers to and incorporates herein Paragraphs 1 through 12 as though fully set forth at length herein.

14. OWL and Bhatt agreed to have OWL arrange for the transportation of 14 containers as listed in Exhibit A.

15. As part of the OWL's contractual obligations, OWL was to secure space with Hapag for the transportation of the cargo, obtain original bills of lading from Hapag for the shipments and remit ocean freight to Hapag as paid by Bhatt for the transportation of the cargo.

---

[1] Bhatt has been unable to locate the tendered "non genuine" Hapag bill of lading HLCUBSC2006BEXP5 provided to Bhatt by OWL prior to remittance of any ocean freight thereon to OWL. Investigation is continuing.

[2] Bhatt has been unable to locate the bill of lading HLCUBSC2006BOZO5 generated by Hapag. On information, the originals would have been tendered to Hapag for release of the cargo associated therewith. Investigation is continuing.

16. OWL transmitted non-genuine bills of lading to Bhatt to induce Bhatt to pay OWL for the ocean freight charges. *See* Exhibit B.

17. Bhatt did in fact pay OWL for the freight charges as reflected on Exhibit A.

18. However, OWL breached said contract by providing non-genuine bills of lading to Bhatt, and by failing to remit to Hapag the ocean freight charges remitted to OWL by Bhatt.

19. As a result, to facilitate the release of the cargo to Bhatt's customers, Bhatt was required to "double pay" the freight charges. That is, Bhatt was required to pay directly to Hapag the freight charges that OWL should have remitted to Hapag.

20. Bhatt was damaged in the amount of $18,014.65 as reflected in Exhibit A, plus interest, fees and costs.

## V. SECOND COUNT

**(For Conversion against all OWL)**

21. In the alternative: Plaintiff refers to and incorporates herein by reference Paragraphs 1 through 12 as though fully set forth at length hereat.

22. OWL collected ocean freight from Bhatt in the amounts listed in Exhibit A which should have been remitted to Hapag for the shipments listed in Exhibit A.

23. Instead of remitting the funds to Hapag, OWL converted the funds to their own use.

24. As a result, Bhatt was damaged in the minimum amount of $18,014.65 plus interest, fees and costs.

## VI. JURY DEMAND

25. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Bhatt International Trading, Inc. prays for judgment against OWL as follows:

For judgment against Bhatt:

a. In the minimum amount of $18,014.65

b. For pre and post judgment interest

c. For attorney's fees and costs

d. For such other and further relief as this Court deems proper.

Respectfully submitted,

Eric R. Benton
SBN: 00797890
Southern District I.D.: 20751
Victoria E. Harmeyer
SBN: 24131374
Southern District ID: 3837478
**MAYER, LLP**
2900 North Loop West, Ste. 500
Houston, Texas 77092
Tel: (713) 868-5560
Fax: (713) 864-4671
E-Mail: ebenton@mayerllp.com
E-Mail: vharmeyer@mayerllp.com